UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

JACK D. MATHERLY,

    Plaintiff,

    v.

COMMISSIONER OF SOCIAL
SECURITY,

    Defendant.

Case No. 3:20-CV-997 JD

**OPINION AND ORDER**

Plaintiff Jack Matherly appeals the denial of his claim for disability and disability insurance benefits. The ALJ denied his claim after determining he was not disabled. The Court now remands the case to the Commissioner, finding that the ALJ committed reversible error by failing to properly consider how Mr. Matherly's usage of his nebulizer and inhaler affected his residual functional capacity.

    A.    **Factual Background**

In April 2018, Mr. Matherly applied for a period of disability and disability insurance benefits, alleging disability beginning in July of 2016. (R. 157, 159.) He primarily alleged that he was disabled due to chronic obstructive pulmonary disease (COPD), asthma, heart problems, stomach issues, and vision issues. (R. 179.)

On March 18, 2020, after reviewing Mr. Matherly's medical records and listening to his testimony at the hearing, the ALJ found that he was not disabled. (R. 24.) The ALJ determined that Mr. Matherly suffered from multiple severe impairments, including COPD, asthma, obstructive sleep apnea, and obesity. (R. 17.) However, the ALJ found that Mr. Matherly's bronchitis, hearing loss, eczema, and gastroesophageal reflux disease were not severe

impairments. (R. 18.) The ALJ then found that none of these impairments or combination of impairments was equal in severity to the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. (*Id.*) After reviewing the record, the ALJ concluded that Mr. Matherly had the residual functional capacity (RFC) for light work as defined in 20 C.F.R § 404.1567(b), except for the following limitations:

> [C]laimant can occasionally climb ramps and stairs; never climb ladders, ropes, and scaffolds; can occasionally balance, stoop, kneel, crouch, and crawl; can have no more than occasional exposure to extreme heat and extreme cold, humidity, dusts, fumes, odors, gases, poor ventilation, and hazards such as dangerous moving machinery and unprotected heights.

(R. 19.) Determining that Mr. Matherly was capable of performing past relevant work as a bartender and as a cashier, the ALJ found that he was not disabled. (R. 22.) The ALJ also determined that other jobs existed in significant numbers in the national economy that Mr. Matherly would have been able to perform given his age, education, work experience, and RFC. (R. 23.) Mr. Matherly requested a review by the Appeals Council, which was denied on September 30, 2020, thereby making the ALJ's decision the final decision of the Commissioner for purposes of judicial review. *See* 42 U.S.C. § 405(g).

**B.      Standard of Review**

Because the Appeals Council denied review, the Court evaluates the ALJ's decision as the final word of the Commissioner of Social Security. *Schomas v. Colvin*, 732 F.3d 702, 707 (7th Cir. 2013). This Court will affirm the Commissioner's findings of fact and denial of benefits if they are supported by substantial evidence. *Craft v. Astrue*, 539 F.3d 668, 673 (7th Cir. 2008). Substantial evidence consists of "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971). This evidence must be "more than a scintilla but may be less than a preponderance." *Skinner v.*

*Astrue*, 478 F.3d 836, 841 (7th Cir. 2007). Even if "reasonable minds could differ" about the disability status of the claimant, the Court must affirm the Commissioner's decision as long as it is adequately supported. *Elder v. Astrue*, 529 F.3d 408, 413 (7th Cir. 2008).

The ALJ has the duty to weigh the evidence, resolve material conflicts, make independent findings of fact, and dispose of the case accordingly. *Perales*, 402 U.S. at 399–400. In evaluating the ALJ's decision, the Court considers the entire administrative record but does not reweigh evidence, resolve conflicts, decide questions of credibility, or substitute the Court's own judgment for that of the Commissioner. *Lopez ex rel. Lopez v. Barnhart*, 336 F.3d 535, 539 (7th Cir. 2003). Nevertheless, the Court conducts a "critical review of the evidence" before affirming the Commissioner's decision. *Id.* An ALJ must evaluate both the evidence favoring the claimant as well as the evidence favoring the claim's rejection and may not ignore an entire line of evidence that is contrary to his or her findings. *Zurawski v. Halter*, 245 F.3d 881, 887 (7th Cir. 2001). The ALJ must provide a "logical bridge" between the evidence and the conclusions. *Terry v. Astrue*, 580 F.3d 471, 475 (7th Cir. 2009).

**C.    Standard for Disability**

Disability benefits are available only to those individuals who can establish disability under the terms of the Social Security Act. *Estok v. Apfel*, 152 F.3d 636, 638 (7th Cir. 1998). Specifically, the claimant must be unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The Social Security regulations create a five-step process to determine whether the claimant qualifies as disabled. 20 C.F.R. §§ 404.1520(a)(4)(i)–(v); 416.920(a)(4)(i)–(v). The steps are to be used in the following order:

3

1. Whether the claimant is currently engaged in substantial gainful activity;
2. Whether the claimant has a medically severe impairment;
3. Whether the claimant's impairment meets or equals one listed in the regulations;
4. Whether the claimant can still perform past relevant work; and
5. Whether the claimant can perform other work in the community.

See *Dixon v. Massanari*, 270 F.3d 1171, 1176 (7th Cir. 2001).

At step two, an impairment is severe if it significantly limits a claimant's ability to do basic work activities. 20 C.F.R. §§ 404.1522(a), 416.922(a). At step three, a claimant is deemed disabled if the ALJ determines that the claimant's impairment or combination of impairments meets or equals an impairment listed in the regulations. 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii). If not, the ALJ must then assess the claimant's residual functional capacity, which is defined as the most a person can do despite any physical and mental limitations that may affect what can be done in a work setting. 20 C.F.R. §§ 404.1545, 416.945. The ALJ uses the residual functional capacity to determine whether the claimant can perform his or her past work under step four and whether the claimant can perform other work in society at step five. 20 C.F.R. §§404.1520(e), 416.920(e). A claimant qualifies as disabled if he or she cannot perform such work. The claimant has the initial burden of proof at steps one through four, while the burden shifts to the Commissioner at step five to show that there are a significant number of jobs in the national economy that the claimant can perform. *Young v. Barnhart*, 362 F.3d 995, 1000 (7th Cir. 2004).

**D.     Discussion**

Mr. Matherly argues that the ALJ's decision should be remanded for two reasons: (1) the ALJ erred in her subjective symptom analysis (DE 19 at 4–12); and (2) the ALJ did not properly

evaluate medical opinion evidence (*Id.* at 12–15). Mr. Matherly's argument concerning the ALJ's subjective symptom analysis contains several sub-arguments. One of these sub-arguments is that the ALJ failed to correctly account for Mr. Matherly's daily nebulizer and inhaler usage when determining his RFC. (*Id.* at 11–12.) The Court finds this argument to be the most persuasive. Therefore, it will not address Mr. Matherly's remaining arguments, which will either be moot or can be addressed on remand.

Before performing step four, the ALJ must determine the claimant's RFC. *Warner v. Astrue*, 880 F. Supp. 2d 935, 941 n.4 (N.D. Ind. 2012) (citing 20 C.F.R. §§ 416.92(e), 416.945). A claimant's RFC is "the most [he] can still do despite [his] limitations." 20 C.F.R. § 404.1545(a)(1). The RFC must be assessed based on all the relevant evidence in the record. *Id.* When making her RFC determination, the ALJ "must consider all of a claimant's symptoms, their consistency with the objective medical evidence and other evidence in the record, and their intensity, persistence, and limiting effects . . . ." *Morrison v. Comm'r of Soc. Sec.*, No. 3:17-CV-00914-MGG, 2019 WL 1417254, at *2 (N.D. Ind. Mar. 29, 2019). Assessing a claimant's symptoms is a two-step process. 20 C.F.R. § 404.1529. First, the ALJ determines whether the individual has a medically determinable impairment that could reasonably be expected to produce the individual's alleged symptoms. S.S.R. 16-3P; 20 C.F.R. § 404.1529(d)(1). Once the ALJ finds the existence of a medically determinable impairment that could reasonably be expected to produce the alleged symptoms, she must evaluate the intensity and persistence of those symptoms to determine the extent to which they impede the claimant's ability to perform work-related activities. S.S.R. 16-3P. In determining the extent to which the symptoms impede the claimant's ability to work, "[t]he ALJ must evaluate all limitations that arise from medically

5

determinable impairments, even those that are not severe, and may not dismiss a line of evidence contrary to the ruling." *Villano v. Astrue*, 556 F.3d 558, 563 (7th Cir. 2009).

In making her RFC determination, the ALJ first found that Mr. Matherly's medically determinable impairments could reasonably be expected to cause difficulty sleeping, difficulty breathing, shortness of breath on walking, exertion, or exposure to pulmonary irritants, and a generally limited ability to walk and climb stairs. (R. 19.) The ALJ then determined that the claimant's statements about the intensity, persistence, and limiting effects of his symptoms were inconsistent with the record. Ultimately, the ALJ concluded that Mr. Matherly had the RFC for light work as defined in 20 C.F.R § 404.1567(b), with certain limitations. *See supra* pp. 1–2. In support of this RFC, the ALJ relied on objective medical evidence, activities of daily living, and medical opinion evidence. As to the objective medical evidence, the ALJ noted that even though Mr. Matherly had "some reduced lung function" and "abnormal findings" on pulmonary function tests prior to the use of his bronchodilators, his lung function responded positively after the use of bronchodilators. (*Id.*) The ALJ then noted that, in addition to the medical evidence, Mr. Matherly's activities of daily living suggested his impairments were less limiting than alleged. (R. 21.) Mr. Matherly was able to "help with house work, such as laundry and vacuuming, watch TV, live with others, read, manage personal care, prepare meals, shop in stores, manage his own finances, follow instructions, get along with authority figures, and handle stress and changes in routine." (*Id.*) The last piece of evidence the ALJ considered in formulating the RFC was medical opinion evidence. The ALJ relied on the opinions of state agency medical consultants, which she found supportable and consistent with the record. However, the ALJ discounted the opinion of Dr. Osorio, one of Mr. Matherly's treatment providers, because it was not supported by the record. (R. 22.)

The Court finds that the ALJ erred because she did not consider the potential limitation of administering the nebulizer and inhaler on a daily basis when formulating the RFC. During his hearing, Mr. Matherly testified that the "first thing" he did on a typical day was administer the "nebulizer treatment." (R. 47.) The nebulizer was a machine that took about "15 minutes" to use and he had to use it "several times a day." (R. 48.) On average, Mr. Matherly said he would use the nebulizer "every four hours." (R. 47.) As for his inhalers, Mr. Matherly would have to use them every "two to four hours" when he was having "trouble breathing." (R. 47.) Other medical records also indicate that he was supposed to use the nebulizer every four to six hours and that he used it, along with his inhalers, three to four times a day. (R. 398–99; R. 603.) However, despite the portions of the record indicating that Mr. Matherly had to use his nebulizer and inhaler frequently throughout the day, the ALJ failed to consider whether this frequent usage would impact his RFC.

Because Mr. Matherly's frequent usage of the nebulizer and the inhaler could affect his ability to work, the ALJ was required to consider that limitation. "In making an RFC finding when . . . a medically determinable impairment imposes environmental restrictions, an ALJ must consider any resulting limitations and restrictions that may affect other work-related abilities and reduce a claimant's ability to work." *Klitz v. Barnhart*, 180 F. App'x 808, 810 (10th Cir. 2006) (citing 20 C.F.R. § 416.945(d)). In *Klitz*, the plaintiff was a woman who testified that she used an at-home nebulizer two or three days a week, twice a day, and that it took fifteen to twenty-five minutes to administer. *Id.* The Tenth Circuit remanded because the ALJ "never addressed any effect [plaintiff's nebulizer use] might have on her ability to work." *Id*; *see also Konoloff v. Comm'r of Soc. Sec.*, No. 1:14-CV-00338-SLC, 2016 WL 1237884, at *10 (N.D. Ind. Mar. 30, 2016) (finding that remand was warranted where "the ALJ's silence concerning [plaintiff's]

nebulizer use in the RFC" made it unclear whether he meant to "reject the frequency of [plaintiff's] nebulizer use" or "inadvertently overlooked [plaintiff's] nebulizer use"). Here, the ALJ similarly did not address the effect that Mr. Matherly's nebulizer usage may have had on his ability to work.

The Government argues that neither the record nor plaintiff's testimony support a finding that Mr. Matherly would require multiple unscheduled breaks in order to administer his nebulizer and inhaler. First, the Government claims that "Plaintiff did not testify with any greater specificity as to his [nebulizer] treatment, other than using it 'first thing' every day." (DE 20 at 12.)  However, the transcript of Plaintiff's hearing shows otherwise. Plaintiff specifically testified that he used the nebulizer "[e]very four hours. Some days I use it more than that. Some days I use it about that." (R. 47.) He also testified that the treatment took about "15 minutes." (R. 48.) This testimony could support a finding that he needed multiple unscheduled breaks in a day. Next, the Government argues that various portions of the record contradict his testimony and that he was not actually using the inhaler and the nebulizer as frequently as he now asserts. However, the ALJ did not articulate this reasoning when writing her opinion. Therefore, this argument need not be considered by the Court as it amounts to an impermissible *post-hoc* rationalization for why the ALJ did not include a limitation based on the frequency of treatment in the RFC. *See Parker v. Astrue*, 597 F.3d 920, 922 (7th Cir. 2010) (describing how the *Chenery* doctrine "forbids an agency's lawyers to defend the agency's decision on grounds that the agency itself had not embraced" (citations omitted)); *see also Lawson v. Colvin*, No. 1:14-CV-01851-JMS, 2015 WL 5334374, at *5 (S.D. Ind. Sept. 14, 2015) ("The Commissioner's attempts to rehabilitate the ALJ's decision for reasons not identified by the ALJ are *post hoc* rationalizations that violate the well-established *Chenery* doctrine.").

It is possible, as the Government contends, that the ALJ's failure to include Mr. Matherly's nebulizer use in the RFC was because she believed the record contradicted his testimony. However, it is also possible that the ALJ inadvertently overlooked Mr. Matherly's frequent use of his nebulizer and inhaler when crafting the RFC. *See Stephens v. Heckler*, 766 F.2d 284, 287 (7th Cir. 1985) ("One inference from a silent opinion is that the ALJ did not reject the evidence but simply forgot it or thought it irrelevant."). The Court should not speculate as to the ALJ's reason for failing to include Mr. Matherly's regular use of the nebulize and his inhalers in the RFC. *Williams v. Bowen*, 664 F. Supp. 1200, 1207 (N.D. Ill. 1987) ("No court should be forced to engage in speculation as to the reasons for an ALJ's decision." (citation omitted)). If the ALJ intended to reject Mr. Matherly's statement that he needed to use the nebulizer, on average, every four hours, and his statement that he had to use his inhaler as often as every two hours, she was required to explain this analysis to allow for meaningful appellate review. *Briscoe ex rel. Taylor v. Barnhart*, 425 F.3d 345, 351 (7th Cir. 2005) ("In addition to relying on substantial evidence, the ALJ must also explain his analysis of the evidence with enough detail and clarity to permit meaningful appellate review."). However, the ALJ never explained why she failed to give any weight to Mr. Matherly's frequent use of his nebulizer and inhaler when determining his RFC.

The ALJ's failure to explain this is not harmless error. Harmless error occurs when "it is predictable with great confidence that the agency will reinstate its decision on remand because the decision is overwhelmingly supported by the record though the agency's original opinion failed to marshal that support . . . ." *Spiva v. Astrue*, 628 F.3d 346, 353 (7th Cir. 2010). If the ALJ had determined that Mr. Matherly needed multiple unscheduled breaks to use his nebulizer and inhaler throughout the workday, then it is possible the ALJ would have a more restrictive

9

RFC for Mr. Matherly, one that would have disqualified him from performing his past work as a bartender and cashier, as well as other jobs existing in the national economy. This is reflected by the vocational expert's response to a hypothetical. When asked about a person with the RFC of Mr. Matherly, but who needed three to four unscheduled breaks of up to 15 to 20 minutes, the vocational expert testified that this would be too lengthy and that the individual would be considered off task. (R. 58.)

On remand, the ALJ should examine whether Mr. Matherly's usage of the inhaler and nebulizer affects his RFC and his ability to perform the jobs the vocational expert identified. Specifically, the ALJ should consider whether Mr. Matherly had to use the nebulizer and inhaler as frequently as he asserted in his testimony. The ALJ should also consider whether Mr. Matherly had to use the nebulizer and inhaler at random times, or whether he could use it at designated times, such as before or after work. *See Klitz*, 180 F. App'x at 810 (reminding the ALJ to examine on remand whether the nebulizer was used "at random, uncontrollable times, or whether she could use it before work, during established breaks, or after work in order to treat her condition effectively.") If the ALJ needs to further develop the record further in order to make an informed decision, she has a duty to do so. *Clayborne v. Astrue*, No. 06 C 6380, 2007 WL 6123191, at *4 (N.D. Ill. Nov. 9, 2007) ("The ALJ's duty to adequately develop the record arises from the Commissioner's regulatory obligation to develop a complete medical record before making a disability determination.").

### E.   Conclusion

For those reasons, the Court REVERSES the Commissioner's decision and REMANDS for additional proceedings consistent with this opinion. The Clerk is DIRECTED to prepare a judgment for the Court's approval.

SO ORDERED.

ENTERED: March 9, 2022

              /s/ JON E. DEGUILIO
              Chief Judge
              United States District Court